IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AARON HENRY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) C.A. No. 17-472 (MN) |
| | ) |
| ROBERT MAY, Warden, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, | ) ) ) |
| | ) |
| Respondents.[1] | ) |

**MEMORANDUM OPINION[2]**

Aaron Henry. *Pro se* Petitioner.

Brian L. Arban, Deputy Attorney General, Delaware Department of Justice, Wilmington, DE. Attorney for Respondents.

September 22, 2020
Wilmington, Delaware

---

[1] Warden Robert May replaced former Warden Dana Metzger, an original party to the case. *See* Fed. R. Civ. P. 25(d).

[2] This case was re-assigned from the Honorable Gregory M. Sleet's docket to the undersigned's docket on September 20, 2018.

**NOREIKA, U.S. DISTRICT JUDGE:**

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") and numerous supplements filed by Petitioner Aaron Henry ("Petitioner"). (D.I. 2; D.I. 11; D.I. 12; D.I. 15; D.I. 16; D.I. 24). The State filed an Answer in opposition. (D.I. 42). For the reasons discussed, the Court will deny the Petition.

## I. BACKGROUND

As set forth by the Superior Court Commissioner's Report and Recommendation concerning Petitioner's postconviction motion, the facts leading up to his arrest, convictions, and sentences are as follows:

> On June 4, 2014, members of the Governor's Task Force ("GTF") were conducting surveillance in the area of Room 101 of the Econo Lodge in Newark, Delaware. After contacting the hotel clerk it was determined that Dominique Waters rented the room for one night. Dominique Waters had a 2013 conviction for fraudulently obtaining a prescription and forgery. GTF approached Room 101 and knocked on the door. [Petitioner] slid open the curtain to the room, saw the officers, and quickly closed the curtain. [Petitioner] then ran to the area of the bathroom. The police continued to knock on the door and about 2–3 minutes later [Petitioner] answered the door.
>
> [Petitioner's] left hand and forearm were saturated with water consistent with him attempting to flush drugs down the toilet. Since [Petitioner] was on probation an administrative warrant was approved to search the room. The police saw the toilet overflowing and towels on the ground where it appeared someone was trying to stop the water from proceeding out of the bathroom or clean it up. Dominique Waters told the police that upon hearing the police at the door [Petitioner] wanted her to hide the drugs down her pants. When she refused, he attempted to flush the drugs but the toilet backed up and overflowed. The police recovered approximately 1.71 grams of heroin, 10.6 grams of crack cocaine and $1,290.00. [Petitioner] claimed the money was his.
>
> As of the result of the June 4, 2014 incident, [Petitioner] was arrested on Drug Dealing Possession with Intent to Deliver Cocaine; Drug Dealing Possession with Intent to Deliver Heroin; Possession of a Controlled Substance Tier 2 quantity Cocaine; Possession of a Controlled Substance Tier 1 quantity Heroin; and Tampering with

Physical Evidence. These charges comprise Criminal Action No. 1406003139.

At the time of the June 4, 2014 incident, in a different case, Criminal Action No. 1304002901, [Petitioner] was serving probation for a conviction of tampering with physical evidence. His probation had been transferred to Maryland via the Interstate Commission for Adult Offender Supervision (ICAOS) on January 27, 2014. The June 4, 2014 incident described above resulted in new drug charges, occurred in the State of Delaware (when [Petitioner] did not have permission leave Maryland), and occurred after [Petitioner's] established curfew. The new drug charges, leaving the State of Maryland, and not complying with the established curfew, would each constitute a violation of the terms of [Petitioner's] probation.

If convicted of the charges stemming from the June 4, 2014 incident, [Petitioner] was eligible to be sentenced as a habitual offender, pursuant to 11 Del. C. § 4214(a), and could be facing up to life imprisonment.

Due to [Petitioner's] probation status, he was scheduled for a fast track hearing on July 9, 2014. At that time, the State offered Defendant a plea to Drug Dealing Tier 2, Tampering with Physical Evidence and VOP. The State agreed to cap its Level V sentence recommendation to 10 years on the drug dealing charge, and to recommend Level IV and Level III probation on the VOP and tampering charge.

[Petitioner] rejected the plea and the case was scheduled for a contested violation of probation hearing on July 30, 2014.

On July 18, 2014, John M. Willard, Esquire was retained to represent [Petitioner].

After Attorney Willard was retained to represent [Petitioner], he was able to convince the State to reduce its sentence recommendation from 10 years to 8 years.

\*  \*  \*

On July 30, 2014, [Petitioner] accepted the State's plea offer and pled guilty to Drug Dealing Tier 2, tampering with physical evidence, and VOP. As part of the plea agreement, the State agreed to dismiss all of the remaining charges and to seek habitual offender sentencing on the drug dealing charge but to cap its recommendation for Level V time to a total of 8 years.

2

*State v. Henry*, 2016 WL 792496, at *1–2 (Del. Super. Ct. Feb. 29, 2016). That same day, the Superior Court sentenced Petitioner to an aggregate of ten years at Level V, suspended after eight years for lesser levels of supervision. (D.I. 42 at 1). Petitioner was discharged from his probation as unimproved. He did not appeal his sentence or convictions.

Petitioner filed a *pro se* motion for sentence reduction in January 2015. (D.I. 45-5). The Superior Court denied the motion in March 2015. (D.I. 45-6).

In September 2015, Petitioner filed in the Delaware Superior Court a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 45-7; D.I. 45-9). In February 2016, a Superior Court Commissioner issued a report recommending the denial of the Rule 61 motion. *See Henry*, 2016 WL 792496, at *7. Petitioner filed objections to the Report and Recommendation, as well as supplemental submissions. (D.I. 2-1 at 24). On August 25, 2016, the Superior Court adopted the Commissioner's Report and Recommendation and denied the Rule 61 motion. (D.I. 2-1 at 23-24). Petitioner appealed, and the Delaware Supreme Court affirmed that decision in December 2016. *See Henry v. State*, 152 A.3d 1275 (Table), 2016 WL 7385059, at *1 (Del. Dec. 20, 2016); D.I. 2-1 at 25.

In January 2017, Petitioner filed in the Superior Court a motion for credit time previously served. The Superior Court denied the motion in March 2017.

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to the AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties

3

of the United States." 28 U.S.C. § 2254(a). The AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

4

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989). Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51.

To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that the errors at his trial [] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). If a petitioner attempts to excuse his default on the basis of ineffective assistance of counsel, he can satisfy the prejudice component of the "cause and prejudice" standard by meeting the prejudice standard needed to establish ineffective assistance of counsel under *Strickland*. *See Holland v. Horn*, 519 F.3d 107, 120 (3d Cir. 2008).

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v.*

5

*Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[3] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the state court proceeding. 28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied. *See Harrington v. Richter*, 562 U.S. 86, 98-101 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

---

[3] A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

6

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002). For instance, a decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id*. In turn, an "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014).

Finally, when performing an inquiry under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

### III. PENDING MOTION

During the pendency of this proceeding, Petitioner filed a Motion to Supplement Claim One of the Petition, which amplifies Claim One's assertion of Petitioner's actual innocence by asserting that the police officers falsely accused Petitioner of drug possession. (D.I. 56). The

Court will grant the Motion, and notes that it has considered the supplemental information presented in the Motion during its review of the Petition.

## IV. DISCUSSION

Petitioner's timely filed Petition and multiple subsequent supplements assert the following ten grounds for relief:[4] (1) Petitioner's detention and charges are illegal because he is actually innocent; (2) defense counsel provided ineffective assistance during Petitioner's preliminary hearing; (3) defense counsel provided ineffective assistance during the trial; (4) the Superior Court judge who presided over Petitioner's plea colloquy violated his due process rights by coercing Petitioner to plead guilty; (5) the police violated Petitioner's Fifth Amendment right against self-incrimination; (6) the Superior Court judge and the police violated Petitioner's equal protection rights; (7) Petitioner sustained damage or detriment to his legal rights; (8) there was a violation of certificate of authority (qualifications); (9) certificate of reasonable doubt (appealability); and (10) the Superior Court judge violated the court's rules of criminal procedure, Delaware's judicial code of conduct, formalities, customs, and practices. For the reasons that follow, the Court concludes that none of the claims warrant relief.

### A. Claims One, Seven, Eight, Nine, and Ten: Not Cognizable

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Claims based on errors of state law are not cognizable on federal habeas review, and federal courts cannot re-examine state court determinations of state law issues. *See Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("[s]tate courts are the ultimate expositors of state law"); *Estelle*

---

[4] After filing the Petition, Petitioner filed numerous supplements raising additional claims. Consequently, the numbers the Court uses to identify Petitioner's claims may differ from the numbers Petitioner uses, but the Court notes that it has included all the claims it could discern from Petitioner's filings.

*v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding that claims based on errors of state law are not cognizable on habeas review). This principle extends to the application of state court rules. *See Tillery v. Horn*, 142 F. App'x 66, 68 (3d Cir. 2005) (noting that state court's alleged erroneous application of its own procedural rule does not assert "a cognizable claim on habeas.").

In Claim One, Petitioner appears to allege he is actually innocent because the police did not find any drugs on his person and they did not detain the person who possessed the drugs. (D.I. 2 at 5; D.I. 56 at 1). As a general rule, a claim of actual innocence, if proven by new reliable evidence, permits a court to review the merits of an otherwise defaulted claim and acts as a gateway for excusing procedurally defaulted claims. *See House v. Bell*, 547 U.S. 518, 554-55 (2006). Whether or not a freestanding claim of actual innocence is cognizable on federal habeas review remains an open question in Supreme Court jurisprudence. *Id.* Even if a stand-alone claim of actual innocence were cognizable on habeas review, the threshold showing of actual innocence would be high, requiring a movant to demonstrate (a) "new reliable evidence" that was previously unavailable and establishes that it is more likely than not that no reasonable juror would have convicted him, and (b) that he exercised reasonable diligence in bringing his claim ("the *Schlup* standard"). *See Herrera v. Collins*, 506 U.S. 390, 417 (1993); *Schlup v. Delo*, 513 U.S. 298, 324, 327-28 (1995); *Reed v. Harlow*, 448 F. App'x 236, 238 n.2 (3d Cir. 2011).

Notably, in this proceeding, Petitioner does not allege that he has new reliable and previously unavailable evidence demonstrating his actual innocence, and his vague and self-serving assertion of actual innocence does not satisfy the *Schlup* standard. Thus, the Court will deny Claim One for failing to assert an issue cognizable on federal habeas review.

Claims Seven, Eight, Nine, and Ten allege: damage to Petitioner's legal rights; violation of an unspecified certificate of authority; certificate of reasonable doubt – appealability; and the Superior Court judge violated the Superior Court Rules of Criminal Procedure, Delaware's judicial

9

code of conduct, formalities, customs, and practices. These vague and mostly indiscernible claims do not assert issues cognizable on federal habeas review. Therefore, the Court will deny Claims Seven, Eight, Nine, and Ten for failing to assert a proper basis for federal habeas review.

### B. Claims Two, Four, Five and Six: Procedurally Barred

In Claim Two, Petitioner contends that the attorney who represented him during the preliminary hearing[5] provided ineffective assistance by failing to challenge whether the police had probable cause to arrest him. (D.I. 2 at 7). In Claim Five, Petitioner contends that the police violated his Fifth Amendment right against self-incrimination by not *Mirandizing* him and arresting him when he remained silent. (D.I. 2 at 10). In Claim Six, Petitioner contends that the police and the Superior Court judge presiding over his plea colloquy violated his equal protection rights because the judge was biased, and the police did not charge Dominique Waters – the other person in the hotel room – with drug possession. Petitioner did not present these Claims to the Delaware Supreme Court on direct appeal or post-conviction appeal. Consequently, he has not exhausted state remedies for Claims Two, Five, and Six. At this juncture, any attempt by Petitioner to raise these three Claims in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and denied as procedurally defaulted under Rule 61(i)(3). *See DeAngelo v. Johnson*, 2014 WL 4079357, at *12 (D. Del. Aug. 15, 2014). Given these circumstances, the Court must excuse as futile Petitioner's failure to exhaust state remedies, but still treat Claims Two, Five, and Six as procedurally defaulted.

In Claim Four, Petitioner asserts that the Superior Court judge violated his due process rights by coercing him to enter a guilty plea. Although Petitioner did raise Claim Four to the Delaware state courts in his Rule 61 proceeding and post-conviction appeal, the Delaware state

---

[5] A different attorney represented Petitioner during the plea process.

courts found that Claim Four was procedurally barred under Delaware Superior Court Criminal Rule 61(i)(3) because Petitioner did not raise the argument on direct appeal.  By applying the procedural bar of Rule 61(i)(3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984), that its decision rested on state law grounds.  This Court has consistently held that Rule 61(i)(3) is an independent and adequate state procedural rule effectuating a procedural default.  *See Lawrie v. Snyder*, 9 F. Supp. 2d 428, 451 (D. Del. 1998).

In sum, because Claims Two, Four, Five, and Six are procedurally defaulted, the Court cannot review their merits absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.  Petitioner does not assert any reason for his default of Claims Two and Six.  He attempts to establish cause for his default of Claims Four and Five, however, by blaming defense counsel for not filing a direct appeal.  (D.I. 2 at 9-11).  He also attempts to establish additional cause for his default of Claim Five by asserting that: (1) he believed the Superior Court would have *sua sponte* recognized the *Miranda*/Fifth Amendment argument as a defense; and (2) he thought his other grounds for relief were sufficient.  (D.I. 2 at 10-11).

Petitioner's additional two reasons for not presenting Claim Five to the Delaware Supreme Court constitute mistaken beliefs about the law that do not constitute cause excusing his procedural default.  To the extent he attempts to establish cause for Claims Four and Five by blaming defense counsel for not filing a direct appeal, his attempt is unavailing.  Petitioner never presented in his Rule 61 proceeding or post-conviction appeal an ineffective assistance of counsel claim based on defense counsel's failure to file a direct appeal.  Consequently, this ineffective assistance of counsel allegation is itself procedurally defaulted, *see* Del. Super. Ct. Crim. Rule 61(i)(2), and cannot excuse Petitioner's procedural default of Claims Four and Five.  *See Edwards v. Carpenter*, 529 U.S. 446, 453-54 (2000).

11

In the absence of cause, the Court will not address the issue of prejudice. Additionally, the miscarriage of justice exception to the procedural default doctrine does not excuse Petitioner's default, because Petitioner has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claims Two, Four, Five, and Six as procedurally barred from habeas review.

### C.   Claim Three:  Meritless

In Claim Three, Petitioner contends that defense counsel provided ineffective assistance by not investigating his case and by failing to advise the Superior Court about his mental health issues, including his use of psychotropic medications. The Superior Court Commissioner issued a Report and Recommendation concluding that Claim Three should be denied as meritless, which the Superior Court adopted. *See Henry*, 2016 WL 792496, at * 5-7; (D.I. 45-2 at 80-81). The Delaware Supreme Court affirmed the Superior Court's decision "on the basis of the Superior Court's order, dated August 25, 2016, adopting the report and recommendation of the Commissioner." *Henry*, 2016 WL 7385059, at *1. Therefore, Claim Three will only warrant habeas relief if the Superior Court Commissioner's decision[6] was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms

---

[6]   The Court will base its analysis on the Superior Court Commissioner's Report and Recommendation because that is the last state court decision with a reasoned decision. Therefore, the Court will refer to the "Superior Court Commissioner" when analyzing Claim Three.

12

prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* A petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). In the context of a guilty plea, a petitioner satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A court can choose to address the prejudice prong before the deficient performance prong, and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland,* 466 U.S. at 698. Finally, although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

With respect to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). In this case, the Superior Court Commissioner's decision was not contrary to clearly established federal law

13

because it correctly identified the *Strickland/Hill* standard applicable to Claim One.[7] *See Fahy v. Horn,* 516 F.3d 169, 196 (3d Cir. 2008) (Pennsylvania Supreme Court's decision was not "contrary to" clearly established federal law because it appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent); *Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court must also determine if the Superior Court Commissioner reasonably applied the *Strickland/Hill* standard to the facts of Petitioner's case. When performing the second prong of the § 2254(d)(1) inquiry, the Court must review the Delaware state court's decision with respect to Petitioner's ineffective assistance of counsel claim through a "doubly deferential" lens.[8] *See Richter*, 562 U.S. at 105. Notably, when § 2254(d)(1) applies, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just

---

[7] The Superior Court Commissioner's Report and Recommendation cited *Strickland* and the Delaware Supreme Court decision *Somerville v. State*, 703 A.2d 629, 631(Del. 1997), which referenced the *Hill* decision. *See Henry*, 2016 WL 792496, at *6 n.44.

[8] As explained by the *Richter* Court,
> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

14

conceivable." *Id*. And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id*. at 101.

In denying Claim Three as meritless, the Superior Court Commissioner determined that (1) Petitioner's statements during his guilty plea colloquy belied his assertion that his guilty plea was involuntary; (2) defense counsel "negotiated a better plea deal than previously offered by the State before counsel was retained";[9] and (3) given the substantial benefit Petitioner derived from pleading guilty, he failed to demonstrate a reasonable probability that he would not have pled guilty but for defense counsel's alleged error. *See Henry*, 2016 WL 792496, at *3-7. For the reasons set forth below, the Court concludes that the Report and Recommendation involved a reasonable application of the *Strickland/Hill* standard.

It is well-settled that "[s]olemn declarations in open court carry a strong presumption of verity" that create a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Here, the transcript of Petitioner's plea colloquy contains his clear and explicit statements that he discussed his case with defense counsel and he was satisfied with defense counsel's representation. (D.I. 45-2 at 51). Petitioner understood the constitutional rights he was waiving by pleading guilty. (*Id*. at 50). Petitioner also understood that he faced a potential life sentence if convicted at trial due to his habitual offender status, and that the Superior Court was not required to accept the State's recommended sentence in the plea agreement (eight years at Level V with decreasing levels of supervision and the dismissal of other felony charges). (*Id*. at 49-50). Finally, Petitioner admitted his guilt to the charges. (*Id*. at 49). In turn, the Truth–In–Sentencing Guilty Plea Form signed by Petitioner indicates that he knowingly and voluntarily

---

[9]   *Henry*, 2016 WL 792496, at *7.

15

entered into his plea agreement; he was satisfied with defense counsel's representation and that defense counsel had fully advised him of his rights; he had not been promised anything not contained in the plea agreement; he was not forced or threatened to enter the plea agreement; and he knew he faced a possible maximum sentence of life for the offense in the plea agreement. (D.I. 45-10 at 5).

Petitioner's unsupported allegations in this proceeding that defense counsel did not advise the Superior Court about his mental health issues and use of psychotropic medications fail to provide compelling evidence as to why the statements he made during the plea colloquy should not be presumptively accepted as true. At no time during the colloquy did Petitioner indicate that his use of medications affected his ability to enter the plea, and the record does not reflect that any such use impaired his ability to understand and participate in the proceeding. As the Superior Court Commissioner noted, Petitioner represented the opposite to the court, namely, that he was not taking anything that prevented him from understanding the proceeding. (D.I. 45-2 at 46); *see Henry*, 2016 WL 792496, at *5. Consequently, the Superior Court Commissioner reasonably applied *Blackledge* in holding that Petitioner was bound by the representations he made during the plea colloquy and on the Truth–In–Sentencing form.[10]

Defense counsel's Rule 61 affidavit and the statements Petitioner made during the plea process also belie his present allegation that defense counsel performed deficiently by failing to investigate the case. Although defense counsel was retained just twelve days before Petitioner entered his guilty plea (D.I. 45-10 at 1-2), defense counsel reviewed the following discovery with

---

[10] Although the Superior Court Commissioner's Report and Recommendation did not cite *Blackledge* when determining the voluntariness of Petitioner's guilty plea, the Delaware case to which it cited – *State v. Stuart.*, 2008 WL 4868658, at *3 (Del. Super. Ct. Oct. 7, 2008) – cited to *Somerville*, 703 A.2d at 632 which, in turn cited to *Blackledge*. *See Henry*, 2016 WL 792496, at *4 n.21.

16

Petitioner: "the police report, the charges, the violation of probation report, the transcript of his preliminary hearing, and the State's Motion for treatment as an habitual offender." (D.I. 45-10 at 2). According to defense counsel, Petitioner was pleased with his lower sentence. (*Id.*).

In addition, Petitioner cannot demonstrate a reasonable probability that he would have gone to trial but for defense counsel's alleged failure. As noted by the Superior Court Commissioner, Petitioner derived a clear benefit by accepting the plea offer negotiated by defense counsel. Thus, looking through the doubly deferential lens applicable to ineffective assistance of counsel claims on federal habeas review, the Court concludes that the Delaware state courts reasonably applied the *Strickland/Hill* standard in denying Petitioner's instant ineffective assistance of counsel argument. Accordingly, the Court will deny Claim Three.

## V.     CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The Court has concluded that the instant Petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the Court will not issue a certificate of appealability.

17

## VI. <u>CONCLUSION</u>

For the reasons stated, the instant Petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate Order shall issue.